## THE OCEANICA.

(Circuit Court of Appeals, Second Circuit. February 16, 1909. On Rehearing May 19, 1909.)

### No. 25.

1. TOWAGE (§ 14\*)—CONTRACTS—ASSUMPTION OF RISKS BY TOW.

A contract of towage, by which the tow assumes all risks, releases the tug from liability for her own negligence, resulting in injury to the tow.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 28; Dec. Dig. § 14.\*]

2. TOWAGE (§ 14\*)—INJURY TO TOW—LIABILITY OF TUG.

Where a contract for the towage of a barge to Buffalo provided that the tow assumed all risks, and after reaching Buffalo, through some arrangement between the masters, the towage was continued for another port, and on the way the barge was wrecked, the tug cannot be held liable therefor, since, if the continuance of the voyage was against the orders of her owner, neither he nor his vessel is liable, because both masters knew that the contract extended to Buffalo only, while, if authorized, the contract must be regarded as extended and applying in all its terms to the towage beyond Buffalo.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 28; Dec. Dig. § 14.\*]

3. TOWAGE (§ 3\*)—CONTRACTS—AUTHORITY OF VESSEL TO REPRESENT CARGO.

A contract for towage, made by the owners of a vessel, is binding on the owners of the cargo, which, as bailees, the owners of the vessel have authority to represent in all matters necessary to its transportation.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 3; Dec. Dig. § 3.\*]

4. TOWAGE (§ 14\*)—CONTRACT EXEMPTING OWNER FROM LIABILITY—EFFECT ON LIABILITY OF TUG.

While a towing tug may be liable in rem for negligence as a tort, even though the owner is not liable, yet, when the owner is exempted from liability by contract, his vessel is also exempted.

[Ed. Note.—For other cases, see Towage, Cent. Dig. § 28; Dec. Dig. § 14.\*]

Coxe, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Western District of New York.

For opinion below, see 144 Fed. 301. See, also, 156 Fed. 306.

Thomas C. Burke (Crangle & Burke, of counsel), for appellant.

George Clinton and Harvey L. Brown (Clinton & Clinton and Brown, Ely & Richards, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

---

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

WARD, Circuit Judge. In this case the steamship Oceanica, laden with iron ore, and the barge Massasoit, laden with lumber, both bound for Tonawanda, N. Y., were lying at Presque Isle, about three miles above Marquette. The Oceanica was owned by the Tonawanda Iron & Steel Company and the Massasoit by John J. Boland and Charles Keenan. Mills, who was the Tonawanda Company's vessel manager, made a contract over the telephone with Boland, who was the managing owner of the Massasoit, that the Oceanica should tow the Massasoit from Marquette to Buffalo, the tow to assume all risks. We find this to be the contract, because Mills so testifies, and because the day after it was made he so stated in a letter to Boland, requesting a reply if there was any difference of understanding, and no reply was sent, and, finally, because Boland, though a witness at the trial, did not contradict Mills' testimony as to the contract. The tug did not drop the tow at Buffalo, but continued on with her towards Tonawanda. On the way down the Niagara river the tug broke her propeller and cut her line to the tow, which was carried by the current against the intake pier and became a total loss.

We are confronted at the outset of the case with the preliminary question whether the agreement made released the tug and her owners from liability for the loss of the tow, even if it was due to the negligence of those in charge of the tug. In this state a common carrier may contract against his own negligence; but such a contract will not be construed to cover the carrier's negligence, unless intention to do so is expressly stated. The reason is that, the stipulation having something besides negligence to apply to, viz., the carrier's liability as insurer, it will not be supposed that the parties intended to cover the carrier's liability for his own negligence, unless that is expressly, or by necessary inference, included. Canfield v. B. & O. R. R. Co., 93 N. Y. 532, 45 Am. Rep. 268; Kenney v. N. Y. C. & H. R. R. R. Co., 125 N. Y. 422, 26 N. E. 626. In England, where a carrier may contract against his own negligence, the law is the same. Beven on Negligence (2d Ed.) p. 1128. The same rule was laid down by the Supreme Court of the United States, before it had decided in Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, on grounds of public policy, that a common carrier could not contract against liability for his own negligence. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465.

A tug is not, in relation to its tow, a common carrier, being only bound to the exercise of ordinary care. The Margaret, 94 U. S. 495, 24 L. Ed. 146. It follows that a contract against liability for negligence cannot be construed in the case of a tug as it may be in the case of a common carrier. The tug being only liable for negligence, if the tow agrees to assume all risks, no risks can be meant except those for which the tug is liable, viz., the consequences of her own negligence. There is no other class of risks upon which the clause can operate as in the case of common carriers, viz., those arising from liability as insurer. Unless construed to cover the tug's negligence, the stipulation is meaningless; i. e., an agreement by the tow to assume risks to which she is subject without any stipulation and for which there is no

liability at all on the part of the tug. Still, in the case of The Syracuse, 12 Wall. 167, 20 L. Ed. 382, decided before the cases of The Margaret, supra, and Railroad Co. v. Lockwood, supra, had set at rest all question as to the extent of the tug's liability to her tow and as to the right of a common carrier to contract against the consequence of his own negligence Justice Davis said:

"It is unnecessary to consider the evidence relating to the alleged contract of towage, because, if it be true, as the appellant says, that by special agreement the canal boat was being towed at her own risk, nevertheless the steamer is liable, if through negligence of those in charge of her the canal boat has suffered loss. Although the policy of the law has not imposed on the towing boat the obligation resting on a common carrier, it does require on the part of the persons engaged in her management the exercise of reasonable care, caution, and maritime skill, and if those are neglected, and disaster occurs, the towing boat must be visited with the consequences."

The learned judge must have meant that an agreement by the tow to tow at her own risk should not be construed to cover the tug's negligence. This was the view of Judge Nelson in the court below (The Syracuse, 6 Blatchf. 2, Fed. Cas. No. 13,717), who began his opinion with these words:

"One ground of defense set up is that by the contract of towage it was agreed that the canal boat was to be towed by the steamer at her own risk. The answer to this is that this contract does not exempt the steamboat from liability for damages caused to the canal boat by the negligence of those in charge of the steamboat."

The evidence in that case as to the agreement was that the exemption appeared on a printed receipt for towage, which was signed after the boat had been taken in tow and the tow had started and the towage had been paid. Obviously such a provision could not under those circumstances have been held a contract binding upon the tow. Still it must be admitted that the learned judge was speaking of a special agreement entered into between the tug and the tow that the latter should be towed at her own risk. The Syracuse has never been cited on this point in any subsequent case in the Supreme Court arising out of a towage contract; but it has been followed in the lower courts in the following cases: Deems v. Albany & Canal Line, 14 Blatchf. 474, Fed. Cas. No. 3,736; The M. J. Cummings (D. C.) 18 Fed. 178; The Rescue (D. C.) 24 Fed. 190; The American Eagle (D. C.) 54 Fed. 1010; The Jonty Jenks (D. C.) 54 Fed. 1021; In re Moran (D. C.) 120 Fed. 556; The Somers N. Smith (D. C.) 120 Fed. 569; Alaska Commercial Co. v. Williams, 128 Fed. 362, 63 C. C. A. 92.

Such contracts in other relations than that of tug and tow have been held to cover negligence. The Fri, 154 Fed. 333, 83 C. C. A. 205; McCormick v. Shippy (D. C.) 119 Fed. 226, 230; Id., 124 Fed. 48, 59 C. C. A. 568; Chicago, Milwaukee & St. Paul Railway Co. v. Wallace, 66 Fed. 506, 14 C. C. A. 257, 30 L. R. A. 161; Long v. Lehigh Valley R. R. Co., 130 Fed. 870, 873, 65 C. C. A. 354; Bates v. R. R. Co., 147 Mass. 255, 17 N. E. 633; Hosmer v. R. R. Co., 156 Mass. 506, 31 N. E. 652. And we see no reason why they should be differently constru-

ed between tug and tow. This conclusion renders consideration of the other questions involved in the case unnecessary.

Decree reversed, but, in view of the authorities to the contrary, without costs.

COXE, Circuit Judge (dissenting). Starting with the proposition, regarding which there can be no doubt, that the Massasoit, a helpless barge, was towed by the Oceanica upon the pier of the Buffalo Waterworks and impaled there until the barge and her cargo became a total loss, it would seem to be the duty of the court not to permit any harsh or novel interpretation of the law to stand between her and redress. As the tug is only liable for her own negligence, the opinion of the court proceeds upon the theory that if the tow assumes all risks nothing can be contemplated except the assumption of the risk attributable to such negligence. Grant that this is so, it by no means follows that the tow is remediless if injured by the fault of the tug.

In 1870 the Supreme Court decided in the case of The Syracuse, 12 Wall. 167, 20 L. Ed. 382, that the tug could not be relieved by such an agreement from the consequences of her own negligence. This decision has been followed by a long line of authorities, some of them being cited in the opinion of the court, until the principle has been recognized as an established rule of the admiralty courts, not only by lawyers but by vessel owners as well. In the case of The Edmund L. Levy, 128 Fed. 683, 63 C. C. A. 235, this court said:

"The agreement of the canal boat to be towed at her own risk did not exempt the tug from liability for damages occasioned by her own negligence."

The wisdom of the rule cannot be doubted. It ought to be against public policy to permit a vessel to contract against her own fault. To allow her to do so begets recklessness, carelessness and neglect. The same reasons for prohibiting such a contract in the case of common carriers apply, though not, perhaps, to the same extent, in the case of a towage contract. In both cases the design is to prevent those who have the absolute control of another's property from extorting an agreement that they may neglect all reasonable precautions to preserve it. I can see no reason for abrogating the rule and every reason why it should be continued.

If, however, the facts found by the court be correct, it is difficult to perceive how the question arises at all in the case at bar. The court finds that the contract was:

"That the Oceanica should tow the Massasoit from Marquette to Buffalo, the tow to assume all risks."

When the tow reached Buffalo it is obvious that the contract was completed and the agreement to assume all risks which was a part of the contract, ended when the contract ended. The accident happened after the vessels had left Buffalo and were on their way to Tonawanda down the Niagara river. How an agreement to assume all risks on voyage from Marquette to Buffalo can be made applicable to a voyage from Buffalo to Tonawanda I am unable to understand.

I think the decree was right and should be affirmed.

### On Rehearing.

WARD, Circuit Judge. The libelants contend in the first place that, as the court has found the towage contract made between the owners of the steamer Oceanica and the barge Massasoit to have been from Marquette to Buffalo, its terms cannot be held to apply to the subsequent towage from Buffalo to Tonawanda. Therefore it is argued that the agreement of the owner of the barge to assume all risks did not apply to the stranding of the barge in the Niagara river. We think this view erroneous. If the master of the Oceanica to oblige the master of the barge towed the barge beyond Buffalo against his owners' orders, then neither the Oceanica nor her owners are liable because the owners of the barge knew that the contract was to tow simply to Buffalo. The R. F. Cahill, 9 Ben. 352, Fed. Cas. No. 11,735; The Andrew White (D. C.) 108 Fed. 685. On the other hand, if the towage beyond Buffalo was within the authority of the master of the Oceanica, and not contrary to his owners' orders, then the contract must be regarded as extended and applying in all its terms to towage beyond Buffalo.

In the next place the petitioners contend that, the ownership of the cargo being different from the ownership of the barge, the cargo owners have a right to recover, even if the barge owners have not. No difference between the rights of the cargo and of the barge were pointed out either in the pleadings, in the proofs, in the printed briefs, or on the oral argument. It is now, however, admitted by the claimants of the Oceanica that the cargo was owned by third parties, and the question, therefore, arises whether their rights against the Oceanica differ from the rights of the owners of the barge.

The claimant of the Oceanica contends that the cargo owners must claim through, and are therefore bound by, the towage contract. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 381, 12 L. Ed. 465; Stoddard v. Long Island R. R. Co., 5 Sandf. (N. Y.) 180, 188. When the towage contract was made, the owners of the barge were bailees of the cargo, and under the right and duty of representing it in matters necessary to transportation. The contract was certainly to tow the barge and her cargo. If it had contained no exemption, the owners of the barge could have recovered against the Oceanica for damage to both barge and cargo. So if the owners of the Oceanica had refused to perform the towage, and damage had thereby ensued, the contract could have been enforced for the benefit of the cargo as well as of the barge. We think that the cargo owners are not strangers to the contract, and that for the reasons next to be considered the contract is a defense against their claim.

But the libelants claim that, even if the owners of the Oceanica in a suit in personam could not be held by the owners of the barge for the loss of the barge because of the contract, still that the vessel herself is liable to them in rem. The authorities cited only show that a vessel guilty of a tort is personified in the admiralty, and may sometimes be held liable in rem when her owners are not liable at all. For example, a vessel may be condemned as guilty of engaging in piracy, her owners not being liable at all, because it was without their knowledge or

privity (The Malek Adhel, 2 How. 210, 11 L. Ed. 239); or a vessel may be held at fault in rem for a collision because of the negligence of a compulsory pilot, when her owners would not be liable in personam (The China, 7 Wall. 53, 19 L. Ed. 67; and see Homer Ramsdell Co. v. Compagnie Générale Transatlantique, 182 U. S. 406, 21 Sup. Ct. 831, 45 L. Ed. 1155); or a vessel demised by charter party may be liable in rem for negligence of the owner pro hac vice, when her owners would not be responsible in personam (The Barnstable, 181 U. S. 464, 467, 21.Sup. Ct. 684, 45 L. Ed. 954). The subject has been considered by this court in The W. G. Mason, 142 Fed. 913, 917, 74 C. C. A. 83, in which Judge Wallace pointed out that according to the law of this country liability in rem is not necessarily coextensive with the personal liability of the owner.

No doubt a suit in rem against a vessel for negligence is a suit ex delicto, even if there has been a contract between the parties. Suits arising out of negligence are ex delicto, even when charter parties or bills of lading regulate the rights of the parties. This fact, however, does not nullify the contract. In such suits against a vessel in rem the agreement is always pleaded and proved. The books are full of suits against vessels for damage to cargo or baggage, where the vessel was discharged because of exemptions contained in the agreement between the parties. If the claimant shows that by agreement he is legally exempted from liability, his vessel is exempted also. It would, indeed, be extraordinary if a libelant by proceeding in rem could recover against the owner's property, when by virtue of the contract between the parties he could not recover against the owner in personam. The law is well expressed by Mr. Justice Brown in Bancroft v. Queen of the Pacific, 180 U. S. 49, 21 Sup. Ct. 278, 45 L. Ed. 419. In that case the libelant sued the vessel in rem for damages to a shipment under a bill of lading containing the following clause:

"It is expressly agreed that all claims against the P. C. S. S. Co., or any of the stockholders of said company, for damage to or loss of any of the within merchandise, must be presented to the company within 30 days from date hereof, and that after 30 days from date hereof no action, suit, or proceeding in any court of justice shall be brought against said P. C. S. S. Co., or any of the stockholders thereof, for any damage to or loss of said merchandise; and the lapse of said 30 days shall be deemed a conclusive bar and release of all right to recover against said company, or any of the stockholders thereof, for any such damage or loss."

The action was begun four years after the loss. The claimant excepted to the libel because, among other things:

"The causes of action have been waived and abandoned by virtue of a limitation clause of 30 days contained in the bill of lading or shipper's receipt."

This exception was overruled by the District Court (The Queen of the Pacific, 61 Fed. 213, 214), but sustained in the Supreme Court; Mr. Justice Brown saying:

"The Court of Appeals in its opinion dwelt upon several propositions arising upon the pleadings and evidence, but in the view we have taken of the case we shall find it necessary to discuss but one, which is, in substance, that the libelants did not, as required by the bill of lading, present to the company their claims for damage to the merchandise within 30 days from the date of the bills of lading, April 27 and 28, 1888. There is no pretense of

a compliance with this condition. Two answers are made to this defense: First, that the limitation applies only to claims against the steamship company or any of the stockholders of said company, and not to claims against the vessel; second, that the limitation is unreasonable.

"1. The first objection is quite too technical. It virtually assumes that there were two contracts, one with the company and one with the ship, the vehicle of transportation owned and employed by the company, and that while the company as to all its other property is protected by the contract, as to this particular property, used in carrying it out, it is not so protected. But, if such be the case with respect to this particular stipulation, must it not also be so with respect to the other stipulations in the bill of lading, to which the company is a party, but not the ship? Thus, 'the responsibility of said company shall cease immediately on the delivery of the said goods from the ship's tackles.' Can it be possible that the responsibility of the ship shall not cease at the same time? 'The company shall not be held responsible for any damage or loss resulting from fire at sea or in port, accident to or from machinery, boilers or steam,' etc. But shall the company be exempt and not the ship? 'It is expressly understood that the said company shall not be liable or accountable for weight, leakage, breakage, shrinkage, rust, etc., * * * nor for loss of specie, bullion, etc., unless shipped under its proper title or name, and extra freight paid thereon.' But shall the ship be liable for all these excepted losses, notwithstanding that the company is exonerated? These questions can admit of but one answer. There was in truth but one contract, and that was between the libelants, upon the one part, and the company in its individual capacity and as the representative of the ship, upon the other.

"There is no doubt of the general proposition that restrictions upon the liability of a common carrier, inserted by him in the bill of lading for his own benefit and in language chosen by himself, must be narrowly construed. Still they ought not to be wholly frittered away by an adherence to the letter of the contract, in obvious disregard of its intent and spirit. It is too clear for argument that it was the intention of the company to require notice to be given of all claims for losses or damage to merchandise intrusted to its care, and as such damage could only come to it while the merchandise was upon one of its steamers, or in the process of reception or delivery, and as the owner would have his option to sue either in rem or in personam, it could never have been contemplated that in the one case he should be obliged to give notice and not in the other. In either event, the money to pay for such damage must come from the treasury of the company, and we ought not to give such an effect to the stipulation as would enable the owner of the merchandise to avoid its operation by simply changing his form of action. It would be almost as unreasonable to give it this construction as to hold that it should apply if the action were in contract, but should not apply if it were in tort. The 'claim' is in either case against the company, though the suit may be against its property."

The Circuit Court of Appeals for the Third Circuit had, before this decision was handed down,. said of a similar clause in a bill of lading:

"It is further contended by the libelant that the stipulation as to notice contained in the St. Hubert's bill of lading is not a defense to an action in rem, because the provision was only for the protection of the shipowners, and did not apply to the ship. We do not think there is either reason or authority for so narrow and harsh a construction of this stipulation as to notice. There may be cases in which it is necessary to discriminate between the liability of the shipowner and that of the ship; but this is not one of them. It is an exemption stipulated for in the bill of lading of the ship for injury to goods done on the ship, notice of claim for which is required to be given before removal from the custody of the ship. The shipowner can hardly be said to have secured himself against liability for want of notice of claim, if such exemption is not available when his property is seized and subjected to payment of that very liability. As said by Judge McPherson in the case of The Westminster (D. C.) 102 Fed. 368, where a similar clause was under

consideration: 'This, I think, cannot properly be construed so as to exempt the shipowner if he should be sued personally in a formal proceeding that may end in seizing his property by one kind of writ, and to deny him exemption if he should be sued in another form of proceeding that seizes his property in the beginning by a different kind of writ. * * * Ultimately his property is to be reached in order to satisfy the libelant's claim; and, if he is "liable" when his property is exposed to the danger of a final writ of execution in a personal action, I can see no ground for holding that he is any the less liable when his property is seized in limine by a proceeding in rem. It is familiar law that exemptions are to be strictly construed against the carrier; but even in an exemption a strained construction should not prevail over the plain meaning of words.'" The St. Hubert, 107 Fed. 727, 731, 46 C. C. A. 603, 607.

We do appreciate keenly that the decision of the majority of the court as to the right of a tug to contract against her own negligence is a departure from previous decisions. The question should, and we hope will, be set at rest in this case by the Supreme Court.