### TEN EYCK v. DIRECTOR GENERAL OF RAILROADS et al.

(Circuit Court of Appeals, Second Circuit. June 2, 1920.)

No. 243.

1. **Towage** ⬅3—**Contract by which tow assumes risk of tug's negligence valid.**

   A contract between tug and tow, by which the tow assumes all risks of the towing, *held* not invalid as against public policy, and to cover the risk from the tug's negligence.

2. **Towage** ⬅4—**Tug, in relation to tow, not common carrier.**

   A tug is not, in relation to its tow, a common carrier.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by Kittie Ten Eyck against the Director General of Railroads, with the Hartman-Blanchard Company impleaded. Decree for libelant against the Hartman-Blanchard Company, which appeals. Affirmed.

Certiorari denied 254 U. S. ——, 41 Sup. Ct. 14, 65 L. Ed. ——.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for appellant.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellee Ten Eyck.

Burlingham, Veeder, Masten & Fearey, of New York City (Chauncey I. Clark, of New York City, of counsel), for appellee Director General.

Alexander & Ash, of New York City, amicus curiæ (Mark Ash, of New York City, of counsel), for New York Tow Boat Exchange.

Hornblower, Miller, Garrison & Potter, of New York City, amicus curiæ (George S. Hornblower, of New York City, of counsel), for New York Trap Rock Corporation.

Before WARD, HOUGH, and MANTON, Circuit Judges.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

MANTON, Circuit Judge. Kittie Ten Eyck owned the canal boat Florence Trembley. It was chartered on the 17th of September, 1918, to the appellant, Hartman-Blanchard Company. The Pennsylvania Railroad Company, among other things, was engaged in towing and owned the tug P. R. R. No. 7. It was sent to tow the Trembley, and picked her up in the slip at Ninety-Sixth street shortly after midnight on September 18, 1918. This towing contract was made under these circumstances. On September 2, 1918, the Director General of Railroads, then in control of the Pennsylvania Railroad, sent Hartman-Blanchard Company, by registered mail, the following notice:

"United States Railroad Administration,

"W. G. McAdoo, Director General of Railroads,

"Pennsylvania Railroads—Eastern Lines.

"Office: Foot of Cortland Street,

"New York, N. Y., September 2, 1918.

"Gentlemen: We beg to inform you that it has become necessary for us to cease being responsible for vessels while in tow of our tug. On and after September 11, 1918, the following conditions will apply to all work accepted and performed by tugs owned, employed or chartered by the Pennsylvania Railroad Company: All towing is done at the risk of the tow. Neither we, nor the tugs employed in the service, nor the owners shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs, in the performance of the towage service, shall become the servants of and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips.

"Very truly yours, D. C. Chase, Supt. Steam Towing."

On the afternoon of September 17, 1918, the Hartman-Blanchard Company contracted for the towage by the tug by telephone, calling the office of the superintendent of steam towing of the Pennsylvania Railroad, and asked to tow the canal boat Florence Trembley from Ninety-Sixth street, East River, Manhattan, to South Amboy, N. J. The record of the railroad company shows that a clerk in the office of the superintendent of steam towing answered the telephone and made entry of this order for towing in the book kept for that purpose, and later gave the necessary instructions for towing the Florence Trembley. When the towing commenced, the tide was ebb, the wind easterly, and the weather misty, and about 12:20 a. m. of the same day, the No. 7, with two boats made fast on her port side, and three on her starboard side, the Florence Trembley being the outside boat on the starboard side, attempted to pick up the boat the Florence O'Boyle, which was lying in the same slip, and when making fast to the O'Boyle the barges drifted out of the slip, and the strong ebb tide caught the head of the tow, carrying it downstream, and the Florence Trembley came in contact with a bathhouse at the end of the pier, damaging her. She was without motive power of her own, and was therefore in control of the charterer and the tug. The libelant and her husband lived on the boat, the latter acting as the captain.

The receipt of the notice of September 2, 1918, is conceded. After the libel was filed against the Director General of Railroads, under the fifty-ninth rule of admiralty (29 Sup. Ct. xlvi), the Hartman-Blanch-

ard Company was brought in. The District Judge relieved the Director General of Railroads from liability because of the written notice served September 2, 1918, and its acceptance as a condition of the contract.

[1] We are urged upon this appeal to rule that public policy forbids the enforcement of a condition of the contract relieving the tugs employed in the service from responsibility for any damage done to the tow through negligence of the master or crew of the tug while engaged in the performance of towage service, or to contract so as to make the servants of the tug the servants of the craft or vessel which is being towed. This court had this question presented in The Oceanica, 170 Fed. 893, 96 C. C. A. 69. There we approved a contract for towage of a barge which provided that—

"The tow assumed no risks, and releases the tug from liability for her own negligence resulting in damage to the tow."

We said there:

"A tug is not, in relation to its tow, a common carrier, being only bound to the exercise of ordinary care. The Margaret, 94 U. S. 495, 24 L. Ed. 146. It follows that a contract against liability for negligence cannot be construed in the case of a tug as it may be in the case of a common carrier. The tug [owner] being liable for negligence if the tow agrees to assume all risks, no risk can be meant except those for which the tug is liable, viz. the consequences of her own negligence. There is no other class of risks upon which the cause can operate as in the case of common carriers, viz. those rising from liability as insurer. Unless construed to cover the tug's negligence, stipulation is meaningless; i. e., an agreement by the tow to assume risks to which she is subject without any stipulation and for which there is no liability at all on the part of the tug."

Later, in Monk v. Steamboat Co., 198 Fed. 472, 117 C. C. A. 232, this court approved the previous ruling in The Oceanica Case, and said:

"When the boat towed assumes all the risks of towing, it assumes the risk of the tug's negligence, as we have held in The Oceanica, 170 Fed. 893, 96 C. C. A. 69, because, the tug not being an insurer or common carrier want of ordinary care and prudence is all the tug and owners are responsible for. There is nothing else for the contract assuming all risks to operate on."

In B. & O. R. R. v. Voigt, 176 U. S. 498, 20 Sup. Ct. 385, 44 L. Ed. 560, the court held that an express messenger in an express car by contract could exonerate the railroad company from liability to him, and that such a contract did not contravene public policy. This was held because it was said that the railroad company did not assume toward him the obligations of a common carrier as it would to a passenger because he was not a passenger, that as to him it assumed the obligations of a private carrier, and that, a private carrier is free to contract as to the conditions of the carriage, and no reason of public policy forbids such carrier from stipulating against its own negligence and making it a part of the contract. To the same effect are the cases of Robinson v. B. & O. R. R. Co., 237 U. S. 84, 35 Sup. Ct. 491, 59 L. Ed. 849, and Santa Fé R. R. Co. v. Grant Bros. Co., 228 U. S. 177, 33 Sup. Ct. 474, 57 L. Ed. 787.

[2] A tug is not, in the relation to its tow, a common carrier. The Margaret, 94 U. S. 494, 24 L. Ed. 146. In McCormick v. Shippy, 124 Fed. 48, 59 C. C. A. 568, a case in this court, where a suit was brought by the owner of a yacht against the charterer to recover for loss of the yacht, and which charter contained a provision that "the charterer shall assume no responsibility for loss or damage to the yacht," it was said:

"There is no question of public policy involved in this charter party, as in the case of a common carrier. It is well settled that the parties in such a case have the right to provide by apt language against liability for negligence. Hartford Fire Ins. Co. v. Chicago, etc., Ry. Co., 175 U. S. 91, 98, 20 Sup. Ct. 33, 44 L. Ed. 84."

This rule prevails in the British courts. See United Service, 8 Prob. 56, affirmed in Court of Appeals, 9 Prob. 3; Luna v. Kingston, 36 Times Law Reports, 112 (Dec., 1919).

Notice imposing the conditions under which the tug would be accepted having been received, the railroad company was justified in accepting the towage contract, fully understanding that the libelant agreed to these terms. The terms stated in the notice, therefore, became part of the oral contract entered into for the service. On this record, we affirm the decree below.

Decree affirmed.