## THE WIRELESS NO. I. THE A. H. MILLS. THE ANNA J. BROOKS. THE NONPAREIL. O'BOYLE v. TIMMINS et al.

### (District Court, E. D. New York. May 17, 1923.)

1. **Collision ⬯71(3)—Tying barge at head of pier held not negligence.**

   Where, if undocking had been properly carried out, the mooring of a barge at the head of a pier would not have interfered with the navigation of the vessel undocked, *held*, that the barge was free from fault in collision, when the vessel ran against the barge.

2. **Collision ⬯115—Tugs and masters held not liable for collision of undocking vessel.**

   Where undocking of vessel was under arrangement whereby the master of one of the tugs became the servant of the vessel, and the tugs became subject to his orders as the servant of the owner of the vessel, and the tugs faithfully obeyed all such orders, and had cast off lines at the time of collision, they were free from blame, and the owners of the tug, whose master was in charge of the undocking, being exempt from liability for his acts on the vessel, such tug was exempt.

3. **Collision ⬯71(2)—Where collision in harbor caused by impossibility of letting anchor go, vessel was at fault.**

   Where vessel, after backing out of the dock in Jersey City, was carried down the harbor by a strong north wind and ebb tide, and the impossibility of letting go her port anchor made it impossible to control her, she was thereby rendered unseaworthy, and this was the cause of her collision with a barge moored at the end of a dock, so that the vessel was solely to blame.

In Admiralty. Libel by Anthony O'Boyle, as owner of the barge Wireless No. 1, against the steam tugs A. H. Mills, Anna J. Brooks,

and Nonpareil (Edward M. Timmins, claimant of the Nonpareil), in which the United States was impleaded. Libel dismissed as against the steam tugs named, and decree against the United States.

Macklin, Brown & Van Wyck, of New York City, for libelant.

Harrington, Bigham & Englar, of New York City, for The A. H. Mills.

Foley & Martin, of New York City, for The Anna J. Brooks.

Burlingham, Veeder, Masten & Fearey, of New York City, for claimant.

Ralph C. Greene, of Brooklyn, N. Y., for the United States.

CAMPBELL, District Judge. A libel was filed against the steam tugs A. H. Mills, Anna J. Brooks, and Nonpareil for damages caused by collision, and the United States of America, as owner of the steamship West Henshaw, was impleaded on petition of Edward M. Timmins, owner of the Nonpareil, under the Fifty-Ninth rule in admiralty (29 Sup. Ct. xivi).

From the evidence taken herein I find that on February 13, 1920, the barge Wireless No. 1 was taken in tow at South Amboy, N. J., in a flotilla of 14 or 15 boats, made up in tiers of 3 each by the steam tug Overbrook bound to New York. The Wireless No. 1 was placed on the starboard side of the second tier; the barge Blue Crest being ahead of the Wireless No. 1. When the tow reached Pier B, Pennsylvania Piers, Jersey City, the tow was tied up at the end of the said Pier B.

The head tier was tied up at the head of Pier B about 8 o'clock a. m., headed up the river, the Blue Crest being the starboard boat of the head tier; the Wireless No. 1 being the starboard boat of the second tier, the Blue Crest being ahead of the Wireless No. 1. It was snowing at the time. The Overbrook continued up the river with part of the tow. About 10 o'clock a. m. the steamer West Henshaw, which was moored at the south side of the Morgan Street dock, backed out under her own steam, assisted by the steam tug Nonpareil on the port bow and the steam tugs A. H. Mills and Anna J. Brooks on the port quarter.

The master of the steam tug Nonpareil was on the bridge of the steamship West Henshaw and in charge of the undocking, the mate of the Nonpareil being in charge of that steam tug, and he and the masters of the steam tugs A. H. Mills and Anna J. Brooks were under the orders of the said master of the Nonpareil, who was on the bridge of the West Henshaw in charge. The master of the West Henshaw and the Sandy Hook pilot were also on the bridge of the West Henshaw. The tide was ebb and running quite strong. The wind was northeast, shifting to north.

The West Henshaw backed out full speed astern, and went about 100 feet straight; but when she had gone about 200 feet, she dropped down quickly and was going to leeward. When the bow was clear of the dock, the master of the Nonpareil, who was on the bridge in charge, ordered the mate of the West Henshaw to let go the port anchor, and ordered the steam tugs A. H. Mills and Anna J. Brooks around to

the starboard side; the tug Nonpareil remaining on the port bow. The mate of the West Henshaw was unable to let go the port anchor, because the same, from some cause, would not go free of the ship. He consumed some time in making the effort, and by the time the mate of the West Henshaw reported to the master of the Nonpareil that he could not let go the port anchor, the West Henshaw had dropped back so far that, if the master had then ordered the starboard anchor let go, it would not have prevented the collision.

The position of the Nonpareil on the port bow of the West Henshaw became so dangerous that the master of the Nonpareil, who was in charge on the West Henshaw's bridge, ordered the Nonpareil to go to the starboard side of the West Henshaw, and she passed around the West Henshaw's bow. All this time the West Henshaw, under the force of the wind and tide, was dropping down the river and to leeward, when a squall struck the West Henshaw on the starboard side, swinging her bow to port and causing it to come into collision with the Blue Crest, the starboard boat of the first tier of the tow moored at the head of Pennsylvania Pier B, and driving the Blue Crest back against the bow of the Wireless No. 1, causing considerable damage to her.

[1] The master of the Nonpareil was familiar with the custom that prevailed of tying up tows at the head of Pier B, when he undertook the undocking of the West Henshaw, and he was not attempting to enter or leave a slip adjacent to the head of the pier at which the Wireless No. 1 was moored, and, had the undocking been properly carried out, the mooring of said Wireless No. 1 at the head of said pier would not have interfered with the navigation of the West Henshaw. I therefore find that the Wireless No. 1 is free from blame. The New York Central No. 18, 257 Fed. 405, 168 C. C. A. 445; The Daniel McAllister, 258 Fed. 549, 169 C. C. A. 489; The Daniel B. Flannery (C. C. A.) 282 Fed. 545.

[2] The agreement for the undocking of the West Henshaw was made under the following conditions:

"*Pilotage.*—When the captain of any tug engaged in the service of towing a vessel which is making use of her own propelling power goes on board said vessel, it is understood and agreed that said tug boat captain becomes the servant of the owners in respect to the giving of orders to any of the tugs engaged in the towage service and in respect to the handling of such vessel and neither the tugs nor their owners or agents shall be liable for any damage resulting therefrom."

And by virtue thereof the master of the Nonpareil became the servant of the owner of the West Henshaw, and the steam tugs Nonpareil, A. H. Mills, and Anna J. Brooks became subject to the orders of the said master of the Nonpareil as the servant of the owner of the West Henshaw. Monk v. Cornell Steamboat Co., 198 Fed. 472, 117 C. C. A. 232; Ten Eyck v. Director General of Railroads (C. C. A.) 267 Fed. 974; The Oceanica, 170 Fed. 893, 96 C. C. A. 69, certiorari denied 215 U. S. 599, 30 Sup. Ct. 400, 54 L. Ed. 343. The steam tugs Nonpareil, A. H. Mills, and Anna J. Brooks faithfully obeyed all orders given to them by the master of the Nonpareil, had cast off lines,

and were changing their positions at the time of the collision under said orders, and are free from blame.

The owners of the Nonpareil being exempt from any liability for the action of her master while he was in charge of the undocking of the West Henshaw, which was making use of her own propelling power, and was on board her, the Nonpareil is exempt. The Oceanica, supra; Ten Eyck v. Director General of Railroads (C. C. A.) 267 Fed. 974.

[3] The decision as to whether the West Henshaw should be undocked on the morning in question was made by the master of the West Henshaw, but the operation of undocking was in charge of the master of the Nonpareil. The West Henshaw was not to blame for the attempt to undock because of the weather conditions that prevailed at the time the operation commenced, and notwithstanding the increase of the wind after the West Henshaw backed out of the dock, she could have been straightened up and successfully piloted down the river, if the port anchor had been let go when the master of the Nonpareil gave that order. But the impossibility of letting go the port anchor of the West Henshaw made it impossible to control her against the wind and tide, both of which were setting her down to leeward in the direction of Wireless No. 1, and the impossibility of letting go the port anchor of the West Henshaw rendered her unseaworthy and was the cause of the collision, which could have been prevented by letting go the port anchor. I am therefore of the opinion that the West Henshaw was solely to blame for the collision.

The libel is therefore dismissed as against the steam tugs Nonpareil, A. H. Mills, and Anna J. Brooks, and decree will be entered in favor of the libelant against the United States of America, with the usual order of reference.