**BISSO**

v.

**INLAND WATERWAYS CORP.**

No. 14802.

United States Court of Appeals
Fifth Circuit.
March 26, 1954.

Francis Emmett, Eberhard P. Deutsch, Rene H. Himel, Jr., John W. Sims, Deutsch, Kerrigan & Stiles, New Orleans, La., Phelps, Dunbar, Marks & Claverie, New Orleans, La., of counsel, for appellant.

M. Hepburn Many, Asst. U. S. Atty., New Orleans, La., Leavenworth Colby, Sp. Asst. to Atty. Gen., Warren E. Burger, Asst. Atty. Gen., George R. Blue, U. S. Atty., New Orleans, La., John J. Cound, Attorney, Department of Justice, Washington, D. C., for appellee.

Selim B. Lemle, Charles Kohlmeyer, Jr., George B. Matthews, New Orleans, La., Lemle & Kelleher, New Orleans, La., of counsel, amici curiæ.

Before HUTCHESON, Chief Judge, and HOLMES and BORAH, Circuit Judges.

HUTCHESON, Chief Judge.

This is an appeal from a final decree dismissing appellant's libel in personam against Inland Waterways Corporation, owner of the Towboat Cairo, to recover for loss of appellant's Steel Tank Barge Bisso No. 9 while in tow of the Cairo, by the latter's negligence.

On December 1, 1943, National Oil Transport Corporation, charterer of appellant's barge, entered into a contract with appellee for towage of a number of National's barges, including the Bisso No. 9, on the Mississippi River. This contract provided:

"The movement contemplated will be done at the sole risk of the 'craft to be towed' and its cargo, and neither the boats and/or any other equipment used in said service nor the owner, charterer or hirer thereof shall be liable for any loss or damage to the 'craft to be towed' or its cargo nor for any damage done by the 'craft to be towed' however occurring.

"The masters and crews and employees of all boats and/or other equipment assisting the 'craft to be towed', shall, in the performance of said service, become and be the servants of the 'craft to be towed', regardless of whether the 'craft to be towed' assists in the service in any way and irrespective of whether they be aboard the 'craft to be towed' or in command thereof."

In May, 1944, appellee's Towboat Cairo took in tow eight unmanned barges belonging to various persons, and proceeded up the Mississippi River from New Orleans. The Bisso No. 9 was one of these barges. None of the barges had any motive power or steering mechanism.

Because of high water and dangerous conditions prevailing in the Mississippi River above Vicksburg, the Cairo's tow was split up near that point, and moved alternately in groups of four barges, of "doubles tripped".

While attempting to negotiate the center span of the Greenville Highway Bridge, the Cairo negligently brought her tow of four barges into collision with a bridge pier; and appellant's barge was lost in the collision as a direct result of the Cairo's negligence.

The District Court, making full findings of fact and conclusions of law, and filing an opinion,[1] held that the collision was attributable to the negligence of the Cairo; that the "release towage agreement" in question did not relieve the Cairo from liability for negligence; but that the "pilotage clause" was broad enough to make the Cairo's crew appellant's servants and to free appellee from responsibility for their negligence. The libel was accordingly dismissed.

Appellant raises no question of fact. It rests its case on the facts found by the district judge and his conclusion that the first clause, "sole risk and release clause", of the towage contract was, under The Syracuse, 12 Wall. 167, 79 U.S. 167, 20 L.Ed. 382, and The Wash Gray, (Compania De Navegacion, Interior, S. A., v. Fireman's Fund Ins. Co.) 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787, cases invalid. So resting it, it is here insisting that the court erred in holding the second clause, the so-called "pilotage clause", in the contract, providing that the personnel of the tug are to be deemed "the servants of the tow", releases the tug from liability for loss of the tow by negligence of the master of the tug.

Appellee, opposing this view, urges upon us that, far from its being clear, as appellant argues, that a pilotage clause finds justification only where the tow is

---

1. Bisso v. Inland Waterways Corp., D.C., 114 F.Supp. 713.

manned and under its own power, the situation of a tug with a dumb tow makes it more necessary for it to relieve itself of what may approach an insurer's liability.

As to the "sole risk" or "release" clause, which the court below held invalid, appellee insists that this clause also was valid and effective. Arguing that the cases cited by the district judge in support of his view that the clause was invalid, are not authority for the holding, appellee, citing The Oceanica, 2 Cir., 170 F. 893 and Ten Eyck v. Director General of Railroads, 2 Cir., 267 F. 974, insists that all that the Syracuse and Wash Gray cases held and all that they stand for is that the exculpatory provision denied effect in each of them was not intended by the parties to encompass negligence or at least they did not make this sufficiently clear. It argues in short that these two cases are but applications of the general rule that, while releases from liability for negligence are, except as to common carriers, bailees, etc., generally valid, they are construed strictly against the party favored, and, unless clearly and unequivocally showing that they include negligence, they will not be construed to include it.[2] So arguing, it insists that the questioned clause in The Syracuse failed to evince an unequivocal intention to include the negligence of the tower in the risk assumed by the tow, and that the same is true of the release clause involved in The Wash Gray.

In strong support of these views, the brief *amici curiae*, basing its arguments on the settled law that a tug is not a common carrier when it engages in towage, The Margaret, 94 U.S. 494, 24 L. Ed. 146, and that the relationship of bailor—bailee does not exist between tug and its tow,[3] insists that if the tug is not a common carrier or bailee as to its tow, there is no reason in logic or in law why it should not be permitted full freedom of contract in limiting or restricting its liability.

Urging, therefore, that there should be, and is, no difficulty in the way of parties agreeing as they please in cases such as this, and that if the parties to a contract unequivocally shift the liability for loss or damage to the tow from the owner of the tug to the owner of the tow, there can be no reason for holding that the shift is invalid, they insist that it would be difficult, if not impossible, to find apter language for doing so than that employed here. So insisting, they urge upon us that, while the district judge was right in exonerating the tug under the "pilotage" clause, he erred in holding that the release towage agreement did not release the tug from negligence.

We find ourselves in general agreement with the approach of appellee and *amici curiae* to the questions presented and the positions taken by them below and here, that not merely one, as found by the district judge, but both of the clauses relied on are valid and effective to release the appellee from liability, and that on both grounds the decree should be affirmed.

**2.** Noonan v. Bradley, 9 Wall. 394, 19 L.Ed. 757; Halliburton Oil Well Cementing Co. v. Paulk, 5 Cir., 180 F.2d 79; Fairfax Gas & Supply Co. v. Hadary, 4 Cir., 151 F.2d 939.

**3.** Stevens v. The White City, 285 U.S. 195, 52 S.Ct. 347, 76 L.Ed. 699; New Orleans Coal & Bisso Towboat Co. v. United States, 5 Cir., 86 F.2d 53.