CHILE STEAMSHIP COMPANY, Inc., as owner of THE scow RARITAN, Libellant,

v.

THE Tug JUSTINE McALLISTER and McAllister Brothers, Inc., Respondents.

United States District Court
S. D. New York.
April 30, 1958.

---

Macklin, Speer, Hanan & McKernan, New York City, for libellant, Gerald J. McKernan, James M. Leonard, New York City, of counsel.

Purdy, Lamb & Catoggio, New York City, for respondents, Vincent A. Catoggio, New York City, of counsel.

CASHIN, District Judge.

In this in personam action, the libellant seeks recovery for damages to its scow, Raritan, which resulted from a collision between the scow and the tug Justine McAllister.

Findings of Fact.

1. The libellant, Chile Steamship Company, Inc., a New Jersey corporation, at all times under consideration was the owner of the scow Raritan, and the respondent, McAllister Brothers, Inc., a New York corporation, at all times under consideration was the owner of the tug Justine McAllister, and on February 14, 1955 operated and controlled the tug.

2. On November 12, 1953 the respondent dispatched to the libellant the following letter:

"Mr. A. D. Dederick, Vice President
"Chile Steamship Company
"25 Broadway
"New York, N. Y.

"Dear Sir:

"We wish to notify you that this Company is forced to decline liability for any damages sustained by your scows and lighters, and their cargoes, which may result from or be caused by towing and navigating in ice while en route from New York Harbor to Hastings-on-Hudsson, New York, and return.

"It is understood, however, that such declination of liability does not free us from other liabilities customarily assumed by the tower.

"We shall keep you advised of the conditions in the River and if we are ordered to tow in ice, we shall exercise all due diligence in the towing of your equipment. However, whether negligent or not, if any damage is sustained in towing in ice, we must be released of all liability on the basis stated above.

"In the above, it is understood that in towing in ice your vessels will not be towed alongside of tug or tugs, but will be towed on a short hawser, astern.

"Yours very truly,

"McAllister Brothers, Inc.
"By: /s/ James P. McAllister
"James P. McAllister
"President"

Although a copy of the letter of November 12 bore the notation "Approved and Accepted: Date: ——— Chile Steamship Company By: ———" and thus was presumably expected to be returned executed by the libellant, such action was not taken; rather, the following letter was dispatched by the libellant on December 2, 1953:

"Mr. James P. McAllister
"President
"McAllister Brothers, Inc.
"19 Rector Street,
"New York, N. Y.

"Dear Sir:

"We wish to acknowledge receipt of your favor of November 12, 1953 with respect to your Company towing our scows and lighters, and their cargoes, in ice while enroute from New York Harbor to Hastings-on-Hudson, New York, and return.
"Your very truly,
"Chile Steamship Company, Inc.
"/s/ A. D. Dederick
"Vice-President."

3. On February 14, 1955, pursuant to a contract of towage entered into between libellant and respondent [1] the Raritan, in tow of the Justine McAllister was proceeding light, down the Hudson River from Hastings-on-Hudson to New York Harbor. At the commencement of the voyage the Raritan was in all respects tight, staunch, strong and seaworthy. During the voyage the Raritan was manned by an experienced scow captain. The weather conditions were such that there was a great deal of ice in the river.

4. When the tug and scow were just south of the George Washington Bridge the tug came to a sudden, unexplained stop, whereupon the bow of the scow came into heavy contact with the stern of the tug. As a result of the contact, the Nos. 6, 7, 8 and 9 transverse channels of the bow rake and the upper portion of the ice shearing plate where badly set in and the center line swash bulkhead was slightly buckled at the bottom, necessitating substantial repairs.

### Conclusions of Law.

I. The letters of November 12, 1953 and December 2, 1953 are part of the contract of towage in issue.

II. The towage contract exonerates the respondent from any liability for damages to the scow occurring during towing in ice.

III. The libel is dismissed with costs to the respondent.

Prior to the decision of the Supreme Court in the case of Bisso v. Inland Waterways Corp., 349 U.S. 85, 75 S.Ct. 629, 99 L.Ed. 911, the Court of Appeals for the Second Circuit had ruled essentially the same contractual exoneration as here in issue, valid. North River Barge Line v. Chile S. S. Co., Inc., 2 Cir., 1954, 213 F.2d 882. This decision was in line with the rule applying to towing cases generally in this Circuit, to the effect that since the operator of a tug is not a common carrier he is free to contract against all liability for his negligence since he is free not to contract at all. The Oceanica, 2 Cir., 1909, 170 F. 893. The Bisso case, supra, considered an exculpatory clause which would relieve the tug and its owners from any responsibility for all negligent conduct. The exculpatory agreement herein involved is clearly distinguishable. The contract expressly reserves the right of the tow to recover for " * * * liabilities customarily assumed by the tower". The only liability which the tower seeks to avoid is that which results from towing in ice. The primary ground of public policy which the Supreme Court cited as a reason for holding invalid the release from liability clause in the Bisso case [349 U.S. 85, 75 S.Ct. 632] was "to discourage negligence

[1] Although the pleadings raise an issue as to whether any contract was entered into by the parties, the fact that the towing did take place, and the fact that the respondent introduced into evidence the letters quoted in Finding No. 2, compel the finding that there was in fact a contract of towage.

by making wrongdoers pay damages". Here, the tower, perceiving that there was unusual danger in towing in ice, made it a condition of his assuming a contract of towage that he be spared the difficulty and expense of defending himself in lawsuits resulting from accidents which were likely to result in the extra-hazardous situation into which the tow owner had voluntarily put his property. Accordingly, the stricture of the Bisso case is not applicable to the limited relief from liability at issue. See Chile Steamship Company, Inc., v. McAllister Lighterage Line, Inc., S.D.N.Y.1956 A.M.C. 1419 and Chile Steamship Company, Inc., v. McAllister Brothers, Inc., S.D.N.Y.1956 A.M.C. 2320.

Since there was a great deal of ice in the river and the libellant chose to take the risk of having the scow towed under those conditions, libellant must bear the resultant loss.

Submit decree.