## OWEN McCAFFREY'S SONS v. DIRECTOR GENERAL OF RAILROADS.

(District Court, S. D. New York. February 27, 1922.)

1. Towage ⏢14—Notice of Director General of Railroads to vessel owner that towing would thereafter be done at risk of tow, and owner's refusal to accept such terms, held not to constitute contract.

Where Director General of Railroads notified owner of vessels that all towing would thereafter be done at the risk of the tow, and the owner in reply stated that it would refuse to accept such terms, but would reserve the right to continue to report vessels for towing under the

same conditions that had previously prevailed in reference to the responsibility for damage, and that if the Director General accepted the orders to tow vessels it would do so on the same terms and conditions that had theretofore prevailed, there was no contract between the parties as to the terms on which the vessels would be towed.

**2. Contracts ⬅⟶27—One who avails himself of services by necessary implication assents to terms on which services were rendered.**

One who, unlike a common carrier, has a right to refuse to render services, may render them on any terms he chooses, and any one who avails himself of the services by necessary implication assents to the terms.

**3. Towage ⬅⟶14—Boat owner could not recover for damages caused by tug's negligence, after accepting services of tug with notice that towing would be done at risk of tow.**

Where Director General of Railroads notified owner of boats that all towing would thereafter be done at the risk of the tow, the owner could not recover damages caused by subsequent negligence of the Director General's tug in towing owner's boat, though owner in reply to notice from Director General stated that it would not be bound by such terms, and that it reserved the right to continue to report boats for towing under the same conditions as to responsibility for damage that had previously prevailed, since by acceptance of the services of the Director General's tug it impliedly assented to the terms stated by the Director General.

In Admiralty. Libel by Owen McCaffrey's Sons against the Director General of Railroads. Libel dismissed.

Park & Mattison, of New York City (Anthony V. Lynch, Jr., of New York City, of counsel), for libelant.

Bulingham, Veeder, Kasten & Fearey, of New York City (W. J. Dean, of New York City, of counsel), for respondent.

WARD, Circuit Judge. The respondent, the Director General of Railroads, operating the Pennsylvania Railroad Company, was engaged among other things in towing coal boats, barges, and other vessels without motive power of their own between New York, South Amboy, and other ports. The libelant, Owen McCaffrey's Sons, is a corporation owning and operating such boats.

On or about February 28, 1919, the libelant's barge Helen was injured while being transported in one of the respondent's flotilla tows from New York to South Amboy. It is admitted that the injuries were due to the negligence of the respondent's servants, and the question is whether the respondent is liable therefor.

[1] The respondent had previously issued the following letter to all his customers:

"We beg to inform you that it has become necessary for us to cease being responsible for vessels while in tow of our tug. On and after September 11, 1918, the following conditions will apply to all work accepted and performed by tugs owned, employed or chartered by the Pennsylvania Railroad Company: All towing is done at the risk of the tow. Neither we, nor the tugs employed in the service, nor the owners shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs, in the performance of the towage service, shall become the servants of and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips."

⬅⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The libelant had replied as follows:

"We beg to acknowledge the receipt of your letter of the 2d inst., in reference to the nonresponsibility of your tugs for damage in towing boats by your company even through negligence. We will not accept your terms as stated in your letter, but we reserve the right to continue to report our boats for towing to your company under the same conditions that have previously prevailed in reference to the responsibility for damage, and, if you accept the orders to tow our boats, you do so on the same terms and conditions that have heretofore prevailed."

These manifestoes merely stated the terms on which the parties respectively would tow or be towed, but they constituted no contract.

[2] One who (unlike a common carrier) has a right to refuse to render services may render them on any terms he chooses, and any one who avails himself of the services, by necessary implication, assents to the terms. He cannot accept the services, and then deprive the party rendering them of his rights by saying that he will not be bound by such terms.

[3] The mind is naturally reluctant to assent to this conclusion, when the term in question is that the person rendering the services shall not be liable for the negligence of himself or of his servants in doing so. But the conclusion follows from the right of the party rendering the services to fix the terms upon which they shall be rendered. The Circuit Court of Appeals for this circuit has held that a tow, which merely agrees to accept all risks, cannot recover damages caused by the tug's negligence. The Oceanica, 170 Fed. 893, 96 C. C. A. 69. When, subsequently to this correspondence, the libelant, without more, delivered its barge to be towed by the respondent, it must be taken to have abandoned any intention of insisting upon its own terms, and to have assented to towage on the respondent's terms. The minds of the parties met by necessary implication.

The case would seem plainer if the point involved were the respondent's charge for towing. Suppose the Director General had published $50 as his rate for towing barges from New York to South Amboy, and that the McCaffrey Corporation had replied that it would pay only $30. If it subsequently delivered a barge to be towed, would it not thereby assent to the Director General's charge? Could it request and accept his service, and then refuse to pay his price, on the ground that there had been no meeting of minds? Would the Director General be obliged to bring a lawsuit to ascertain what the charge ought to be?

In Compania Bilbaina v. Spanish-American Co., 146 U. S. 483, 13 Sup. Ct. 142, 36 L. Ed. 1054, though it was held that the parties' minds had not met upon certain clauses in a written charter party, yet Mr. Justice Blatchford said at page 496 of 146 U. S., at page 148 of 13 Sup. Ct. (36 L. Ed. 1054):

"Without any direct communication with the respondent, and without receiving any communication from it, the vessel was dispatched to Philadelphia and tendered to the respondent on February 18, 1886, not a word being said at the time to the respondent as to the disputed clauses. On these facts, the respondent had a right to conclude that the dissent of the libelant from the two disputed clauses was not insisted upon. It was important to the respondent to know promptly if the charter party which had been signed was binding,

and it was the duty of the libelant, before delivering the vessel to the respondent, to have the latter understand distinctly that the libelant did not deliver her under the charter party which had been signed. It is expressly found, in the tenth original finding of fact, that the respondent, at the time the vessel was delivered to it, supposed that the libelant was delivering her in accordance with the terms of the charter party which the respondent had signed. Under these circumstances, the delivery of the vessel to the respondent by her master was, in legal effect, the adoption by the libelant of the existing charter party, and not an acceptance of the vessel by the respondent, with the omission from the charter party of the two clauses in question. Drakely v. Gregg, 8 Wall. 242, 267. The legal effect of the transaction was that the libelant thus waived its former objections to the charter party, whether it intended to do so or not."

If the serious results which libelant apprehends shall follow from this view, they will be corrected by natural law; that is, unreasonable conditions will impair or destroy the business of those who impose them, because the public will patronize reasonable people.

The libel is dismissed.

⚖═▷For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes