BALTIMORE AND OHIO RAILROAD COMPANY, Plaintiff, v. LONG ISLAND RAILROAD COMPANY, Defendant.

City Court of New York, December 4, 1925.

Carriers — negligence — action for damages to plaintiff's tug arising from collision with car float in tow of defendant's tug while tied to defendant's dock — notice by defendant prior to accident that it would not be liable for damage caused by its negligence to floating equipment lying at its docks ineffective — notice did not include tugs — pleadings — variance between complaint and plaintiff's proof not substantial.

In an action by the plaintiff to recover damages to one of its tugs caused by collision with a car float in tow by one of defendant's tugs, while plaintiff's tug was lying at one of defendant's terminals, in which the damage had been stipulated, a notice mailed to the plaintiff some months prior to the accident to the effect that it would not be responsible for any damage suffered by

vessels, floats, craft, or any kind of floating equipment, lying at its terminals, does not exempt said defendant from liability, since defendant was acting as a common carrier and as such cannot exempt itself from the consequences of its negligence, particularly where the plaintiff required a service from it as a carrier, which no other party could furnish.

Moreover, *it seems* that the language of the notice indicates that it was intended only for and refers only to " floats " rather than tugs.

There was no substantial variance between the complaint and plaintiff's proof. The defendant was not misled and did not claim surprise.

ACTION by plaintiff to recover for injuries to its tug while lying at terminal of defendant.

*Slayton & Jackson* [*G. Noyes Slayton* of counsel], for the plaintiff.

*Burlingham, Veeder, Masten & Fearey* [*Chauncey I. Clark* and *J. Dudley Eggleston* of counsel], for the defendant.

VALENTE, J.   This action was brought by plaintiff, Baltimore and Ohio Railroad Company, to recover for injuries sustained by its tug *Frederick D. Underwood,* while lying at the terminal of the defendant, Long Island Railroad Company, at Long Island City, by reason of a collision with a car float in tow of defendant's steam tug *Patchogue* on November 24, 1920.   Besides a general denial, defendant interposed the affirmative defense of an alleged agreement between the parties by the terms of which defendant was relieved from liability for any damage sustained by plaintiff's tug while lying at defendant's terminal, in consequence of defendant's negligence or otherwise.   The unexplained collision was due to no fault or negligence on the part of plaintiff's tug.   The evidence establishes that it was caused by the carelessness of the defendant's tug in bringing the car float which it had in tow forcefully against plaintiff's receding tug, which was pursuing its own business lawfully.   The facts make out an indisputable cause of action so far as negligence is concerned, and damages have been stipulated by the respective parties, so that no question arises with regard to their amount.

The real question in the case, and one which raises an interesting and novel proposition of law, is the effect of a notice dated July 31, 1920, some months before the accident, and sent by defendant to plaintiff, which reads as follows:        " *July* 31, 1920.

" BALTIMORE & OHIO RAILROAD COMPANY,
        " Attention of Mr. J. H. Clark,
                " Sup't. Floating Equipment,
                        " 285 Broadway, New York City:
        " GENTLEMEN.— We beg to inform you that it has become necessary to cease being responsible for vessels lying at our ter-

minals, Long Island City and Bay Ridge, Brooklyn. On and after September 1, 1920, the following conditions will apply to all floating equipment lying at Long Island Railroad Company terminals, Long Island City and Bay Ridge, Brooklyn: All vessels, floats, craft, or any kind of floating equipment, lying at the Long Island Railroad terminals, Long Island City or Bay Ridge, Brooklyn, are at the risk of the vessel, float or craft. This company will not be responsible for any damage received by said floating equipment while lying at the above mentioned terminals, whether said damage arises through the negligence of this company and/or its employees, or through other causes. This notice applies to all floats whether in charge of a floatman or not, while lying moored at the Long Island Railroad Company terminals, Long Island City or Bay Ridge, Brooklyn.

" Very truly yours,
" H. L. DES ANGES,
" *Marine Superintendent.*"

The author of this letter, Des Anges, was concededly in charge of the marine department of defendant Long Island Railroad Company. This letter is claimed by defendant to serve as a screen against its otherwise established liability. It is not proven that plaintiff agreed to this letter, which, so far as appears, was a unilateral and voluntary communication by the defendant company, unacceded to and unapproved by the plaintiff company. The burden emphatically, therefore, rests upon defendant to prove that the terms of this letter are legally authorized by law and juridically effective between the respective parties.

In support of its contention defendant urges that a " similar letter," which it sent to other companies, has been adjudicated valid and binding in other cases, which it claims are on all fours, notably *Ten Eyck* v. *Director-General of Railroads* ([C. C. A.] 267 Fed. 974; certiorari denied, *sub nom. Hartman-Blanchard Co.* v. *Ten Eyck*, 254 U. S. 646), and *Graves* v. *Davis* (235 N. Y. 315). The letter involved in those cases is reproduced in the opinion of the United States Circuit Court of Appeals in the *Ten Eyck* case, and reads in part as follows: " We beg to inform you that it has become necessary for us to cease being responsible for vessels while in tow of our tug. On and after September 11, 1918, the following conditions will apply to all work accepted and performed by tugs owned, employed, or chartered by the Pennsylvania Railroad Company: All towing is done at the risk of the tow. Neither we, nor the tugs employed in the service, nor the owners shall be responsible for any damage done to the tow through negligence, and the masters and crews of tugs, in the performance of the towage service, shall become

the servants of and identified with the vessel or the craft towed, whether singly or with other vessels owned by you and in possession of charterers, and to the shifting of vessels in and around piers and in slips."

It requires no elaborate refinement of analysis or reasoning to perceive the distinction between such a letter as the one last quoted and defendant's letter of July 31, 1920, which is relied upon by defendant in the case at bar. Such a letter as the one of July 31, 1920, was neither the subject of decision nor of discussion in the *Ten Eyck* or *Graves Cases* (*supra*) or in any of the other multitudinous authorities which are set forth in defendant's lengthy brief. These authorities are all directed to a consideration of letters identical or substantially similar to the letter quoted from the *Ten Eyck* case, and deal with liability in performance of the service of towage and the legal answerability and responsibility of the tug to her tow. The Court of Appeals pointed out, in the *Graves* case, that a tug is not a common carrier of the sea, and that the owners thereof may, therefore, lawfully restrict their legal liability by special agreement. So, also, in the *Ten Eyck* case, the Circuit Court of Appeals of the United States held that the above-quoted notice, which was sent by the Pennsylvania Railroad Company to the owner of a boat which was taken in tow by one of the railroad company's tugs and negligently brought into collision with a bathhouse, was effective and binding, since the relation of common carrier did not exist between the tug and the tow; and likewise the case of *Lehigh Valley Railroad* v. *Steam Tug Cutchogue* (—— Fed. [2d] ——), decided by Federal District Judge BONDY, quoted by defendant, while doubtless good law, is in no wise in point, because it discusses only the topic of liability for negligence in a contract of towage.

The fundamental distinction between the letters involved in all these cases and the letter involved in the case at bar is the unescapable fact that in the case at bar the plaintiff's tug *Frederick D. Underwood,* which was damaged, was *not in tow* by the defendant's tug *Patchogue,* which was negligently brought into collision with her, thereby causing the damage. The plaintiff in the instant case could not go to any float terminal which it might select. It was obligated to go to the specific terminal belonging to the defendant Long Island Railroad Company. Under such circumstances the law wisely dictates to defendant that it legally cannot exempt itself from liability in damages, since plaintiff required a service from it as a carrier which no other party could furnish. Unlike the towage cases, there was no freedom of contract. Plaintiff, willy nilly, in the instant case, had to deal with defendant

at its terminal. Defendant was acting as a common carrier pure and simple, in the service rendered to floats with freight cars. While serving the public, including the plaintiff company, as such, defendant cannot " exempt himself from the consequences of his own or his servant's negligence." (*Mariani Bros., Inc.,* v. *Wilson, Sons & Co., Ltd.,* 188 App. Div. 617, 620.)

The learned counsel for the defendant, it seems to me, have overlooked, therefore, that the type of letter involved in the cases upon which they rely is of a distinct nature and character from the defendant's letter of July 31, 1920, involved in the present case, since the letters involved in the authorities upon which they depend, and from which they quote, apply solely to the peculiar contractual relationship between a tug and a tow, and since they refer only to towing contracts, and not to the general freight movement, which is a public service, and in the engagement of which defendant is a common carrier, and cannot lawfully stipulate away its entire legal liability for negligence and want of due care. Defendant has not cited any authority upholding a letter which in its nature and contents is identical or similar to its letter of July 31, 1920, or which indicates even remotely that any Federal or State court has sanctioned or upheld such a letter as furnishing a basis for complete exemption from legal liability.

It is not for this court to make law. It is for this court to follow the law as expounded for it in the authorities. As hereinbefore remarked, the burden is upon defendant to prove that the terms of the letter of July 31, 1920, which it relies upon as a cloak against its otherwise unquestioned liability, are legally authorized and warranted by the authorities and a sound public policy. As no authorities to this effect have been cited, the letter cannot serve to exempt defendant. The foregoing discussion assumes, without deciding, that defendant's letter applies to the present cause of action. It will be noted that its verbiage, particularly the 4th paragraph, seems to indicate that it was intended only for and refers only to " floats." It seems doubtful that it applies to tugs. It is not, however, necessary to pass upon this point, though, if there be any doubt in interpretation, that doubt should be resolved in favor of plaintiff. Defendant chose the language. (See *McCaffrey's Sons* v. *Director-General of Railroads,* [D. C.], 282 Fed. 728.)

Defendant also urges for the first time in its brief that there is a variance between the complaint and plaintiff's proof. There was no substantial variance. Defendant was not misled. It waived the fancied point by failing to object to the testimony at the trial. There was no failure of proof in the sense that plaintiff

did not make out the cause of action alleged in the complaint. Viewed from the most favorable standpoint to defendant, there were mere unsubstantial differences of detail. (See *Rosenberg* v. *Third Avenue R. R. Co.*, 47 App. Div. 323, 326, 327; *Krieger* v. *Lemole*, 123 Misc. 140.) The Court of Appeals has very recently cautioned the lower courts to be on their guard against sanctifying technicality in a situation of precisely this nature. (*Williamson* v. *Atlas Powder Co.*, 241 N. Y. 557.) It should further be noted that defendant made no claim of surprise.. In the light of all the circumstances, it, therefore, seems clear that the highly technical argument now first urged by it cannot be taken advantage of.

For the foregoing reasons, it follows that judgment must be directed to be entered for plaintiff in the stipulated amount of damages, together with interest and costs. Submit accordingly.