### THE TALISMAN.

### NEW YORK CENT. R. CO. v. LONG ISLAND R. CO.

District Court, S. D. New York.

June 30, 1931.

Bigham, Englar, Jones & Houston, of New York City (Charles A. Van Hagen, Jr., of New York City, of counsel), for libelant.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City (Chauncey I. Clark and Paul Tison, both of New York City, of counsel), for claimant.

KNOX, District Judge.

The facts in this case are very simple. On October 29, 1926, libelant's carfloat No. 37 lay moored in Bridge No. 6 at claimant's Long Island City Terminal. It was there in connection with transportation of freight in interstate commerce. Claimant's tug Talisman in shifting another carfloat brought it into collision with No. 37, with resultant injury to the latter. It is stipulated that the collision was occasioned solely by the negligence of the Talisman. It is also stipulated that upon an unspecified date libelant duly received from claimant a notice dated July 31, 1920, which reads as follows:

"We beg to inform you that it has become necessary to cease being responsible for vessels lying at our terminals, Long Island City and Bay Ridge, Brooklyn.

"On and after September 1, 1920, the following conditions will apply to all floating equipment lying at Long Island Railroad Company terminals, Long Island City and Bay Ridge, Brooklyn: All vessels, floats, craft or any kind of floating equipment, lying at the Long Island Railroad terminals, Long Island City or Bay Ridge Brooklyn, are at the risk of the vessel, float, or craft.

"This company will not be responsible for any damage received by said floating equipment while lying at the above mentioned terminals, whether said damage arises through the negligence of this company and/or its employees, or through other causes.

"This notice applies to all floats whether in charge of a floatman or not, while lying moored at the Long Island Railroad Company terminals, Long Island City or Bay Ridge, Brooklyn."

Libelant never replied to the notice, and the question before the court is whether claimant, in seeking to avoid liability for its own negligence, has successfully done so.

This point was presented to the City

692

Court of the City of New York in the case of Baltimore & O. R. Co. v. Long Island R. Co. (The Patchogue), 126 Misc. Rep. 474, 1926 A. M. C. 45, 213 N. Y. S. 329, and it was there held that the defendant, Long Island Railroad Company, could *not* exempt itself from liability by merely sending out such a notice. The court said, at page 48 of 1926 A. M. C., 126 Misc. Rep. 474, 213 N. Y. S. 329, 332: "The plaintiff in the instant case could not go to any float terminal which it might select. It was obligated to go to the specific terminal belonging to the defendant Long Island Railroad Company. Under such circumstances the law wisely dictates to defendant that it legally cannot exempt itself from liability in damages, since plaintiff required a service from it as a carrier which no other party could furnish. Unlike in the towage cases, there was no freedom of contract. Plaintiff, willy nilly in the instant case, had to deal with defendant at its terminal. Defendant was acting as a common carrier pure and simple, in the service rendered to floats with freight cars."

While this decision is not binding here, it is very apt, and is entitled to respectful consideration, notwithstanding the cases of The Cutchogue (C. C. A.) 10 F.(2d) 671, and Ten Eyck v. Director General of Railroads (C. C. A.) 267 F. 974, upon which claimant strongly relies. The last-mentioned decision holds that the owners of the tugs there concerned had relieved themselves from liability for negligence by having sent out notices to the effect that towage contracts to be performed by the tugs should be executed at the risk of the tows. The theory was that the receipt of such notices by the owners of the vessels to be towed, and their apparent acquiescence therein, resulted in the inclusion of the limitation of the tug's liability in the contracts between the parties. It is my opinion that this line of decisions does not rule the instant case. In the towage cases, there was no compulsion on the part of the towed vessels to accept the terms offered them, and a tug, with respect to its tow, is not a common carrier. Here, however, the situation is altogether different. Both libelant and claimant are common carriers in the transportation of interstate commerce, and libelant, in the discharge of the duty it owes to the public, is compelled to send its boats to the terminal which claimant is required by law to maintain for the interchange of interstate traffic. Furthermore, claimant was under an obligation to receive such freight as might be delivered to the terminal by libelant; and, during such reasonable periods of time as the proper and usual facilities of carrying freight to the terminal were on claimant's property, the same were, in the absence of specific agreement to the contrary, entitled to common-law protection from the negligent acts of the claimant. A mere ipse dixit to the contrary in an effort by claimant to shift its responsibility to afford reasonable, proper, and equal facilities for the interchange of traffic to another carrier should not be permitted to serve that purpose, and libelant may have a decree.