### THE PRIMROSE.

### SWENSON v. BUFFALO BARGE TOWING CORPORATION et al.

### No. 13062.

District Court, E. D. New York.
March 10, 1933.

Thomas A. McDonald, of New York City, for libelant.

Single & Hill, of New York City (Christopher E. Heckman, of New York City, of counsel), for respondents.

GALSTON, District Judge.

The libel alleges that the barge Thomas Sheridan, Jr., while in tow of the steamtug Primrose, was damaged by the negligence of the tug, as the Primrose and her tow, on or about August 22, 1929, were approaching the railroad bridge at Tonawanda, bound east on the New York State Barge Canal.

The towage resulted from a contract made between the Buffalo Barge Towing Corporation and the owner of the barge. Pursuant to that agreement the owner placed his barges at the disposal of the Buffalo Barge Towing Corporation for the canal season of 1929. The towing company assumed the obligation of obtaining cargoes at the best prevailing rates and undertook to arrange for all towing services required. For the services rendered the owner was to pay the Buffalo Barge Towing Company a commission.

A significant clause in the contract bearing upon the issues involved here is the thirteenth: "It is agreed that all risks of damage, loss, or expense to the barges named herein, howsoever caused, occurring during the currency of this agreement shall be assumed by the party of the second part."

Thereafter the Buffalo Barge Towing Corporation entered into an agreement with the Cornell Steamboat Company, under the terms of which the Cornell Steamboat Company agreed to tow on the Barge Canal, Hudson River, and New York Harbor, barges owned or operated or chartered by the Buffalo Barge Towing Corporation. This agreement provided also that the Cornell Company was to be free from liability for damages to barges thus towed, arising out of the negligence of the towing vessel or any other cause.

The proof shows that on August 22, 1929, the Primrose was towing four barges, of which the Thomas Sheridan was one. This barge was the starboard hawser boat, astern of which was the Margery D. The Mary Sheridan was the port hawser boat, and astern of her was the Alice Sheridan. While navigating in the vicinity of Tonawanda, the Thomas Sheridan was brought up against a railroad bridge abutment. The lines between the two tiers of boats parted. The Thomas Sheridan, at the time of striking, overlapped the abutment by a matter of ten or fifteen feet. On the stern of the Thomas Sheridan there was a 12x12 horizontal bumper. On the bow of the Margery D there was a 12x12 vertical bumper. The damage resulting from the collision was to the stern of the Thomas Sheridan.

Various defenses are raised, the most important of which is the effect of the agreement between the owner of the Thomas Sheridan and the Buffalo Barge Towing Corporation. I think the law of the case is found in The Oceanica (C. C. A.) 170 F. 893, 894. The towage had been arranged under a contract similar to that involved in this cause, in respect to the provision that the tow was to "assume all risks." The court said:

"We are confronted at the outset of the case with the preliminary question whether the agreement made released the tug and her owners from liability for the loss of the tow, even if it was due to the negligence of those in charge of the tug. In this state a common carrier may contract against his own negligence; but such a contract will not be construed to cover the carrier's negligence, unless intention to do so is expressly stated. The reason is that, the stipulation having something besides negligence to apply to, viz., the carrier's liability as insurer, it will not be supposed that the parties intended to cover the carrier's liability for his own negligence, unless that is expressly, or by necessary inference, included. Canfield v. B. & O. R. R. Co., 93 N. Y. 532, 45 Am. Rep. 268; Kenney v. N. Y. C. & H. R. R. Co., 125 N. Y. 422, 26 N. E. 626. In England, where a carrier may contract against his own negligence, the law is the same. Beven on Negligence (2d Ed.) p. 1128. The same rule was laid down by the Supreme Court of the United States, before it had decided in Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627, on grounds of public policy, that a common carrier could not contract against liability for his own negligence. New Jersey Steam Navigation Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465.

"A tug is not, in relation to its tow, a common carrier, being only bound to the exercise of ordinary care. The Margaret, 94 U. S. 495, 24 L. Ed. 146. It follows that a contract against liability for negligence cannot be construed in the case of a tug as it may be in the case of a common carrier. The tug being only liable for negligence, if the tow agrees to assume all risks, no risks can be meant except those for which the tug is lia-

ble, viz., the consequences of her own negligence. There is no other class of risks upon which the clause can operate as in the case of common carriers, viz., those arising from liability as insurer. Unless construed to cover the tug's negligence, the stipulation is meaningless; i. e., an agreement by the tow to assume risks to which she is subject without any stipulation and for which there is no liability at all on the part of the tug. Still, in the case of The Syracuse, 12 Wall. 167, 20 L. Ed. 382, decided before the cases of The Margaret, supra, and Railroad Co. v. Lockwood, supra, had set at rest all question as to the extent of the tug's liability to her tow and as to the right of a common carrier to contract against the consequence of his own negligence Justice Davis said: 'It is unnecessary to consider the evidence relating to the alleged contract of towage, because, if it be true, as the appellant says, that by special agreement the canal boat was being towed at her own risk, nevertheless the steamer is liable, if through negligence of those in charge of her the canal boat has suffered loss. Although the policy of the law has not imposed on the towing boat the obligation resting on a common carrier, it does require on the part of the persons engaged in her management the exercise of reasonable care, caution, and maritime skill, and if those are neglected, and disaster occurs, the towing boat must be visited with the consequences.'

"The learned judge must have meant that an agreement by the tow to tow at her own risk should not be construed to cover the tug's negligence. This was the view of Judge Nelson in the court below (The Syracuse, 6 Blatchf. 2, Fed. Cas. No. 13,717), who began his opinion with these words: 'One ground of defense set up is that by the contract of towage it was agreed that the canal boat was to be towed by the steamer at her own risk. The answer to this is that this contract does not exempt the steamboat from liability for damages caused to the canal boat by the negligence of those in charge of the steamboat.'

"The evidence in that case as to the agreement was that the exemption appeared on a printed receipt for towage, which was signed after the boat had been taken in tow and the tow had started and the towage had been paid. Obviously such a provision could not under those circumstances have been held a contract binding upon the tow. Still it must be admitted that the learned judge was speaking of a special agreement entered into between the tug and the tow that the latter should be towed at her own risk. The Syracuse has never been cited on this point in any subsequent case in the Supreme Court arising out of a towage contract; but it has been followed in the lower courts in the following cases: Deems v. Albany & Canal Line, 14 Blatchf. 474, Fed. Cas. No. 3,736; The M. J. Cummings (D. C.) 18 F. 178; The Rescue (D. C.) 24 F. 190; The American Eagle (D. C.) 54 F. 1010; The Jonty Jenks (D. C.) 54 F. 1021; In re Moran (D. C.) 120 F. 556; The Somers N. Smith (D. C.) 120 F. 569; Alaska Commercial Co. v. Williams, 128 F. 362, 63 C. C. A. 92.

"Such contracts in other relations than that of tug and tow have been held to cover negligence. The Fri, 154 F. 333, 83 C. C. A. 205; McCormick v. Shippy (D. C.) 119 F. 226, 230; Id., 124 F. 48, 59 C. C. A. 568; Chicago, Milwaukee & St. Paul Railway Co. v. Wallace, 66 F. 506, 14 C. C. A. 257, 30 L. R. A. 161; Long v. Lehigh Valley R. R. Co., 130 F. 870, 873, 65 C. C. A. 354; Bates v. R. R. Co., 147 Mass. 255, 17 N. E. 633; Hosmer v. R. R. Co., 156 Mass. 506, 31 N. E. 652. And we see no reason why they should be differently construed between tug and tow. This conclusion renders consideration of the other questions involved in the case unnecessary."

More recently our Circuit Court of Appeals again held in Sun Oil Co. v. Dalzell Towing Co. Inc., 55 F.(2d) 63, 65, to the same effect. Judge Swan wrote: "We pass to the contention that the pilotage clause is invalid in so far as it attempts to put upon the tow the risk of the tug captain's negligence while acting as pilot of the vessel as she proceeded under her own power. The authorities relied upon are a statement of Mr. Justice Davis in The Syracuse, 12 Wall. 167, 171, 20 L. Ed. 382, and a recent decision by the late Chief Justice Taft in which that language was repeated. Compania de Navegacion v. Fireman's Fund Ins. Co., 277 U. S. 66, 73, 48 S. Ct. 459, 72 L. Ed. 787 (for convenience hereafter referred to as The Wash Gray). After an elaborate consideration of the question, this court decided that an agreement by the tow to assume all risks was effectual to release the tug from liability for its negligence, because a tug is not a common carrier in its relation to the tow. The Oceanica (C. C. A.) 170 F. 893. Judge Ward's comments on the meaning of Mr. Justice Davis' statement in The Syracuse, and the reasons advanced for thinking it not controlling upon this court need not be here repeated. The authorities have been collected and ably discussed in the Pacific Maru, 8 F.(2d) 166 (D. C. S. D. Ga.). Many have reaffirmed the rule laid down in The Oceanica, and it has

become so firmly established in this circuit and rests, as it seems to us, upon reasoning so sound, that we should not think of departing from it unless the later Supreme Court case clearly demands it."

Thus it was not necessary in the agreement between the owner and the Buffalo Barge Towing Corporation specifically to include negligence as one of the risks contemplated, for as Judge Ward said in The Oceanica, and Judge Swan in the case just quoted: "A tug is not a common carrier in its relation to the tow." The Buffalo Barge Towing Corporation, under the terms of the contract, had full authority to enter into the contract which was made with the Cornell Steamboat Company. It is true that the agreement between the Buffalo Barge Company and the owner of the Thomas Sheridan was not a towage contract, but, on the other hand, it contemplated the making of such a towing agreement as was made between that company and the Cornell Company.

It must follow that neither the Primrose nor its owners can be held liable for negligence, since there was a waiver of negligence by the libelant's assignor.

As against the Buffalo Barge Towing Corporation no negligence is proved.

The libel will be dismissed. Settle decree on notice.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.