## PHOENIX CONST. ASSOCIATES v. CITY OF NEW YORK.

### No. 15699.

District Court, E. D. New York.

June 20, 1940.

Hagen & Eidenbach, of New York City (Henry C. Eidenbach, of New York City, of counsel), for libellant.

William C. Chanler, Corp. Counsel, of New York City (George Seagrave Franklin, of New York City, of counsel), for respondent.

GALSTON, District Judge.

The libel alleges that on January 19, 1939 the Phoenix Construction Associates entered into a charter with the City of New York whereby it was provided that the libellants would deliver to the respondent the derrick Bull at a certain agreed rate of charter hire per diem. Delivery was made and it is alleged that the derrick remained in the possession and control of the City until the 2d of March, 1939. The libel alleges too that the Bull was being used by the employees of the City on a pier demolition project at Pier 64 North River, and that shortly before noon of that day the derrick was shifted by these employees and negligently caused to come into contact with a sunken spile, the existence and location of which were known to the respondent's employees, with consequent damage to the derrick.

The answer raises interesting issues. In the first place denial is made of the making of the charter party with the City of New York. It is alleged that the United States Government, through its Works Progress Administration (hereinafter referred to as W. P. A.), was engaged in the demolition project at Pier 64, North River, New York City; that this project was under the sole operation and control of the W. P. A. and that on or about January 26, 1939 the United States Treasury Department hired the derrick Bull from the libellants for use in connection with that project. Libellant's answer to interrogatories attaches a copy of an alleged contract between the parties. It

is Purchase Order No. O S 6477 of the City of New York, bearing date February 21, 1939, though it is to be noted that the contract referred to in the libel is alleged to be dated January 19, 1939. The purchase order provides that equipment is to report March 1, 1939, and bears the following significant references:

"Deliver to W. P. A., Pier 64 * * * New York City, Proj.: 665–97–2–5 Wk. Proj. * * *"

"As per resolution of Board of Estimate, dated September 22, 1938 * * *"

"Invitation No. W–92, dated January 26, 1939. New York State Procurement Division."

Also attached to libellants' answer to interrogatories is the bid signed by the libellants bearing date January 19, 1939, addressed to the United States Treasury Department, New York State Procurement Division. Therein it is stipulated that: "The City of New York shall not be liable for any damages to the equipment (or any of the operating (and maintenance) personnel) while in use under this contract."

Also the following provision appears: "Vendor must submit to the Insurance and Ownership Unit of the Works Progress Administration * * * all necessary insurance and ownership documents * *."

■ The primary question, assuming the contract for the hire of the Bull during the month of March, 1939, was made by the City of New York as principal, is the effect in the contract of the provision which specifically exempts the City of New York from liability for damages to the equipment, i. e. the derrick. Despite the breadth of the provision, the libellants contend that the waiver did not operate to release the City of New York. However, none of the cases cited sustains that proposition; nor is there any acceptable ground asserted for distinguishing The Oceanica, 2 Cir., 170 F. 893. It is urged that that very well recognized authority does not purport to extend waiver to consequences of gross negligence or wilful misconduct. Even if that were so there is no proof in the record which warrants a finding of gross negligence or wilful misconduct. The Oceanica was followed as the authority in this circuit by Sun Oil Co. v. Dalzell Towing Co., Inc., 2 Cir.. 55 F.2d 63. See, also, The Primrose, D. C., 3 F.Supp. 267, and The John J. Feeney, D. C., 3 F.Supp. 270.

■ A charter is a contract; it is true, a specific form of contract because it relates to vessels, but in the absence of some statutory limitation or considerations of an accepted public policy, there is no sound reason why parties to such a contract should not be permitted to include such waiver provisions as may constitute their bargain.

■ Finally it appears that even if the waiver clause were for any reason held invalid—the contract relied on can hardly be read as one binding the City of New York as a principal or as agent for an undisclosed principal. The W. P. A. project, as was known to the libellants, was for demolishing old Pier 64 and shed, and constructing a new pier and shed. It is true the official sponsor was the City of New York; and its project proposal was made to the Works Progress Administration, a federal agency. The W. P. A. was not only to provide the funds but also to do the work. The bid of the libellants, dated January 26, 1939, was to the United States Government. The situation was not changed in substance because the purchase order for the use of the derrick in March was executed on February 21, 1939 by the City of New York. The project was a continuing one, as is evident from the text of the purchase order. It directed the attention of the libellants to the same works project in which the derrick had theretofore been operating, and to the same resolution of the Board of Estimate of the City of New York, dated September 22, 1938, as had governed the initial proceedings. Moreover, the clause exempting the City of New York from liability in the proposal of January 26, 1939, as well as in the agreement for the use of the derrick in March, 1939, would seem to indicate that neither the libellant nor the W. P. A. intended that the City of New York should be regarded as a party to the chartering of the boat.

The acts of the parties too indicate that the City was not a party to the contract, for the Bull was on location at Pier 64 from November, 1938, until the time she sank on March 2, 1939, and again later, from the middle of March, 1939, to June. The libellants had an engineer and a fireman on board. The Bull was never inspected by a city employee nor did any city employee work on the boat. The inspection was by a superintendent of the Marine Equipment Department of the W. P.

A., and the movements of the Bull on location were under the direction and control of the W. P. A. and not by anyone connected with the City. All the payments were made by the W. P. A. under certificates of the W. P. A. auditor.

Accordingly the libel must be dismissed. Submit findings of fact and conclusions of law in conformity with the foregoing opinion.