PETTERSON LIGHTERAGE & TOWING CORPORATION v. THE J. RAYMOND RUSSELL et al.

POLING RUSSELL, Inc., v. THE H. A. MELDRUM et al.

Nos. 137–178, 138–114.

United States District Court
S. D. New York.

Aug. 19, 1949.

Kirlin, Campbell, Hickox & Keating, New York City, proctors for Petterson Lighterage & Towing Corp. (John H. Hanrahan, Jr., New York City, advocate).

Alexander & Ash, New York City, proctors for Russell Bros. Towing Co., Inc., and Poling Russell, Inc. (Edward Ash and Joseph A. Calamari, New York City, advocates).

Mahar & Mason, New York City, proctors for Matton Towing Corp. (Frank C. Mason and Anthony J. Randolph, New York City, advocates).

KENNEDY, District Judge.

On August 30, 1945, Poling Russell Inc. filed its libel as owner of the tank barge Poling Bros. No. 12 (to be referred to as Poling 12) against the tug H. A. Meldrum. Matton Towing Corporation, owner of H. A. Meldrum, claimed the latter and then impleaded the tug J. Raymond Russell. On July 10, 1945, Petterson Lighterage and Towing Corp., as owner of the tank barge Lawrence J. Tomlinson (to be referred to as Tomlinson) filed a libel against the tug J. Raymond Russell. The owners of the latter impleaded the tug H. A. Meldrum; the suits were consolidated and tried together.

On July 17, 1942, between 5:30 and 5:45 a. m. H. A. Meldrum [1] was proceeding east in the barge canal. She was pushing the barge Tomlinson [2] which was loaded with a cargo of oil and had a freeboard of about one foot. Tomlinson was drawing between 9½ and 10 feet. As the Meldrum with her tow reached a point to the westward of railroad bridge E-106 between Newark, New York and Lyons), she saw the tug J. Raymond Russell,[3] which was pushing the light tank barge Poling 12 [4] bound west. The canal bends to the north in the vicinity of the railroad bridge. At all times in question the weather was clear, all craft were properly lighted, and the tows were properly made up. H. A. Meldrum had a current under foot of about 3 or 4 miles an hour. There is no tenable claim on either side of excessive speed or inadequate lookout.

Shortly after the vessels sighted each other the barges collided at a point which counsel agreed was about 600 feet to the westward of the railroad bridge. Tomlinson was holed at the top of the port forward corner. Poling 12 was damaged at a point about 4 or 5 feet in from the port forward corner but below the deck line. At the time of the collision Poling 12 was drawing about 9 feet. Since she has a 15-foot side, she must have had a freeboard aft of about 6 feet and slightly more forward. As the tugs approached each other those in charge of both diagnosed the situation (whether rightly or wrongly) as one under which H. A. Meldrum was the privileged vessel and J. Raymond Russell the burdened vessel, because the latter was stemming the current and the former had the current under foot.

The main question for decision is, of course, where the responsibility for the collision lies. The area where it took place is known as an "earth section": it is part of a dug canal with a bank of rip rap at the water level. Below that the sides consist of mud. The bottom of the canal at the point of collision is slightly less than 70 feet wide, and at the water level about 90 feet wide (or at least these were the conditions obtaining in 1942), as nearly as I can determine from the evidence, which is not greatly in conflict. Probably the maximum depth of the canal here is about 12 feet.

The weight of the credible evidence compels a finding that the tows were about 1200 feet apart when they first saw each other. Each claims to have blown a bend whistle and J. Raymond Russell claims that in addition she blew two single blasts. H. A. Meldrum admits that J. Raymond Russell blew at least one single blast. But, disregarding at this point the exchange of whistle signals, it is plain, to me at least, that H. A. Meldrum pushed its tow over to its own starboard side and was stopped dead in the water at the time of collision, westward of the bridge, with its barge against the southern bank of the canal.

1. H. A. Meldrum is a steam tug 71.0 feet long, 20.3 feet beam, 7.6 feet sides. She was built in 1899 and has 300 horsepower.

2. Lawrence J. Tomlinson is a tanker barge 200.2 feet long, 36.0 feet beam, 10.2 feet sides. She was built in 1910.

3. J. Raymond Russell is a diesel tug 78.5 feet long, 22.0 feet beam, 9.8 feet sides. She was built in 1939 and has 525 horsepower.

4. Poling Bros. No. 12 is a tanker barge 208.1 feet long, 42.1 feet beam, 14.1 feet sides. She was built in 1936.

It is not denied that at the time of the collision J. Raymond Russell and her tow were under way, although it is urged that she too had maneuvered so as to bring her tow against the starboard (northern) bank, and was rubbing against the bank prior to the collision. It is quite obvious that the claim last mentioned must be discarded as mistaken.[5]

The master of J. Raymond Russell admitted that in the area of collision the bottom pressure and the side pressure on a westbound tug and tow would tend to throw the head of the tow to port. It also seems to be a well-known fact that there is considerable suction under the railroad bridge, the effect of which is unpredictable. A further fact to be taken into consideration is that J. Raymond Russell was under the necessity of making a turn to starboard in order to negotiate the bend, and thus, in all probability, at some point the bow of the tow, by necessity, would be placed athwart the thread of the stream. To me, therefore, everything in the case points to the fact and compels a finding that the collision happened in the fashion contended for by H. A. Meldrum, namely, that J. Raymond Russell simply came around the bend and rammed her tow into the port bow corner of Tomlinson while the latter was dead in the water against the southern bank of the canal.

J. Raymond Russell's real contention seems to be that H. A. Meldrum was in violation of a statutory duty, either under the Inland Rules 33 U.S.C.A. § 154 et seq., or the Pilot Rules, supplementing the Inland Rules and adopted under the authority of 33 U.S.C.A. § 157, or the New York Navigation Law, McK.Consol.Laws, c. 37, § 41, or all together, and was, therefore, under a duty (The Pennsylvania, 1874, 19 Wall. 125, 22 L.Ed. 148) to show that her action not only did not but could not have contributed to the collision.

■ The claimed statutory violations on the part of H. A. Meldrum are, as I understand them, (1) that being the "privileged vessel" she was under a duty to hold her course and speed, and (2) that prior to fetching up dead in the water she had backed her engines without sounding a three-blast signal. It is unnecessary here to discuss whether and to what extent the Inland Rules, the Pilot Rules for inland waters, the New York Navigation Law (and Regulation 30, promulgated by the New York Department of Public Works, which makes applicable to the waters of the Erie Canal the state navigation law and the federal pilot rules) can be said generally to govern navigation in the canal. It is clear to me that, under the circumstances at bar, if H. A. Meldrum had proceeded there would have been a head-on collision instead of a glancing contact between the barges. And the finding heretofore made that H. A. Meldrum was dead in the water against her own starboard bank at the time of the collision probably meets even the test laid down by The Pennsylvania, supra, as far as her failure to sound a backing signal is concerned. But beyond all that, under any code of conduct, the situation was one of special circumstances, and H. A. Meldrum was prudently navigated while J. Raymond Russell was not, in that the latter continued under way when, under the known conditions, she should have stopped her engines to the eastward of the bend. If that had been done, probably the tows could have safely passed each other, even though that may have entailed some loss of time. I find as a fact that J. Raymond Russell was solely at fault.

■ Two subsidiary points remain for consideration. H. A. Meldrum has invoked the statute of limitations relying upon Schiavone-Bonomo Corporation v. Buffalo Barge Towing Corporation, 2 Cir., 1943, 132 F.2d 766, which it reads as a command to the district court sitting in admiralty always to apply the appropriate statute of limitations of the state in which it sits (here the collision occurred on July 17, 1942, and the libel was filed on August 30, 1945; the New York statute being three years, the libel would be barred). But there is surely language in the Schiavone-Bonomo case, supra, which indicates that Judge Learned Hand did not intend any

5. She probably was in that position after the collision.

such result, because in his opinion, 132 F.2d page 767 he is careful to say: "There being in the case at bar no circumstances to excuse the delay we follow the state statute of limitations." Here there are, it is true, no circumstances to excuse the delay, but neither is there any showing of any detriment caused by the delay, a necessary ingredient to the defense of laches.[6]

■ The second subsidiary issue spoken of above is also raised by H. A. Meldrum. She claims that she is protected by a general release, at least against a claim on the part of Tomlinson. The owners of Tomlinson, H. A. Meldrum's tow, had by contract released the tower against all claim for damage to the barge howsoever arising during the term of the towage engagement. In this case, had H. A. Meldrum been partially at fault, the validity of that release would obviously be drawn in question, for the inquiry would at once arise whether Lawrence J. Tomlinson, having absolved H. A. Meldrum in advance, could nevertheless collect all of her damage against J. Raymond Russell. In the posture of the case as I have decided it, the question of the validity of the release becomes moot. However, since my decision and findings will undoubtedly be reviewed, I feel it proper to suggest that the release running to H. A. Meldrum from Lawrence J. Tomlinson is wholly invalid.

■ Professor Robinson outlines the controversy over the validity of these releases so completely, Robinson on Admiralty, 1939, pp. 670–673, that no very elaborate discussion of the matter is necessary here. He concludes that at least obliquely the Supreme Court has held in Compania de Navegacion, Interior, S. A., v. Fireman's Fund Ins. Co., 1928, 277 U.S. 66, 48 S.Ct. 459, 72 L.Ed. 787, that such contracts as are found here are void. The Oceanica, 2 Cir., 1909, 170 F. 893, certiorari denied 215 U.S. 599, 30 S.Ct. 400, 54 L.Ed. 343, sole reliance of H. A. Meldrum here, was cited to the Court by counsel, and I think was overruled. There are, however, several decisions the other way in my own district that I ought to mention. The Primrose, D.C.E.D.N.Y., 1933, 3 F.Supp. 267; The John J. Feeney, D.C.E.D.N.Y., 1933, 3 F.Supp. 270. Both of these cases were decided after the Supreme Court had written in Compania de Navegacion, Interior, S. A., supra. In one of them, The Primrose, supra, there is to be found an excerpt from Judge Swan's opinion in Sun Oil Co. v. Dalzell Towing Co., Inc., 2 Cir., 1932, 55 F.2d 63, 65. In substance Judge Swan there said that the rule in the Second Circuit favoring the validity of a tug's contract against negligence (citing The Oceanica, supra) was so firmly established that the Court would not think of departing from it "unless the later Supreme Court case clearly demands it" (meaning the Compania de Navegacion, Interior, S. A., supra). The Primrose and The John J. Feeney, supra, naturally followed Judge Swan's interpretation of the matter. However, reviewing the same case in which Judge Swan wrote (Sun Oil Co. v. Dalzell Towing Co., 1932, 287 U.S. 291, 53 S.Ct. 135, 77 L.Ed. 311) the Supreme Court was, I think, at pains to point out that Compania de Navegacion in fact clearly demanded a departure from the rule of The Oceanica, saying that exemption of the tug's owner from liability when its servants are used on the bridge of the tow presents a different question than a general release covering negligence. In short, as I read the decisions, a general release or exemption from liability running to the tower is void; but a special case arises when the tow is under power and in control of the tower's servants. In that situation, an exemption against liability on the part of the tower is valid.

Petterson Lighterage and Towing Corporation, as owner of Tomlinson, is entitled to an interlocutory decree in the usual form against J. Raymond Russell

---

6. Redman v. U. S., et al., 2 Cir., 176 F.2d 713, confirms my belief that a state limitation statute is no bar in admiralty if "the libellant shows special circumstances that excuse the delay". Here I think the libelant sustained its burden under the Redman case to negative laches: it did not excuse the delay, but it showed there was no detriment to H. A. Meldrum, or its owners.

and her claimant, and so is the owner of Poling 12, Poling Russell Inc.  The tug H. A. Meldrum is entitled to a dismissal of the impleading petition in the one case, and of the libel in the other.  I believe that each libelant is entitled to a bill of costs, and that H. A. Meldrum and her owners are entitled to one bill of costs to cover both suits.

I have filed findings of fact and conclusions of law.